**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERNEST EUGENE SEE,** | : | **CIVIL ACTION NO. 1:06-CV-2475** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **TIMOTHY FINK,** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Plaintiff Ernest Eugene See ("See") brings this action pursuant to 42 U.S.C. § 1983 against defendant police officer Timothy Fink ("Fink").  See contends that Fink issued a disorderly conduct citation that deprived him of his right to access the courts and to be free from malicious prosecution.  He also advances a civil conspiracy claim under state law.  Fink has filed a motion for summary judgment (Doc. 30).  For the reasons that follow, the motion will be granted.

**I.** **<u>Statement of Facts</u>**[1]

In September 2005, See entered the York Fair in York, Pennsylvania for the purpose of attending a concert at the fair grandstand.  (Doc. 32 ¶ 5; Doc. 42 ¶ 5.) See's wife and his sister-in-law, Debbie Lukenich ("Lukenich") accompanied him to the fair along with two friends, Ed Gates ("Gates") and Bill Gohn.  (Doc. 32 ¶¶ 5-6; Doc. 33, Ex. 1 at 28-29; Doc. 42 ¶¶ 5-6.)

---

[1]In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiffs, the nonmoving parties.  <u>See</u> <u>infra</u> Part II.

### A.   Circumstances of See's Arrest

Forty-five minutes their arrival, See, Lukenich, and Gates went to the fair's beer garden to purchase an alcoholic beverage.  (Doc. 32 ¶ 7; Doc. 33, Ex. 1 at 30 Doc. 42 ¶ 7.)  Fair policy required all guests, regardless of age, to present photo identification to an attendant before entering the bar area.  (Doc. 32 ¶ 8; Doc. 47, Ex. 7 at 16-17; Doc. 42 ¶ 8.)  See and Gates and produced identification and gained admittance to the beer garden.  (Doc. 32 ¶ 9; Doc. 42 ¶ 9.)  When See was approximately ten paces inside the entrance, he noticed that the attendant had refused to admit Lukenich because she lacked identification.  (Doc. 32 ¶¶ 9-10; Doc. 33, Ex. 1 at 36; Doc. 42 ¶¶ 9-10.)  See returned to the entrance and informed the attendant that Lukenich was forty-two years of age, but the attendant remained steadfast.  (Doc. 32 ¶¶ 11-12; Doc. 33, Ex. 1 at 38; Doc. 42 ¶¶ 11-12.)

See then instructed Lukenich to follow him into the beer garden despite the attendant's refusal to admit her.  (Doc. 32 ¶ 13; Doc. 42 ¶ 13.)  See "figured as long as [he and Gates] showed proper ID, we could purchase a beverage and she could stand there with us until we were finished out beverage."  (Doc. 33, Ex. 1 at 39.)  As Lukenich attempted to enter the beer garden, the attendant grasped her arm.[2] (Doc. 33, Ex. 1 at 39; Doc. 42, Ex. 1 ¶ 10.)  See asked the attendant not to touch

---

[2]See believed that the attendant discriminatorily refused to admit Lukenich based upon her age.  (Doc. 33, Ex. 1 at 44; see also Doc. 42, Ex. 1 ¶ 9.)  However, See testified that he possessed no direct or circumstantial evidence of discriminatory motive by the attendant, who he estimated was approximately fifty-five or sixty years of age.  (Doc. 33, Ex. 1 at 36.)  See, then forty years old, also entered the beer garden unimpeded.  (Doc. 32 ¶ 8-9; Doc. 42 ¶¶ 8-9; Doc. 42, Ex. 1 ¶ 2.)

Lukenich, and the attendant summoned two or three fair security officers.  (Doc. 32 ¶¶ 14-15; Doc. 33, Ex. 1 at 39; Doc. 42 ¶¶ 14-15.)  Fair security officers are temporary sheriffs deputies commissioned to perform limited law enforcement functions. (Doc. 42, Ex. 5 at 23-24.)  The officers prevented the situation from escalating and told See to "move on."  (Doc. 32 ¶ 15, Doc. 33, Ex. 1 at 41, 44; Doc. 42 ¶ 15.)  He and Gates then entered the beer garden.  (Doc. 32 ¶ 16; Doc. 42 ¶ 16.)

Once inside, See stated to Gates in a normal, conversational tone:  "[T]his is bullshit," referring to the attendants' refusal to admit Lukenich.[3]  (Doc. 32 ¶ 17; Doc. 33, Ex. 1 at 57; Doc. 42 ¶ 17.)  Three or four fair security officers, including former defendant Charles Sleeger ("Sleeger"),[4] approached and informed See that he would be placed under arrest unless he immediately departed the fairgrounds. (Doc. 32 ¶¶ 18-19; Doc. 42 ¶¶ 18-19.)  Several officers escorted See to a concrete barrier, where the exit to the beer garden was located.  (Doc. 32 ¶ 21; Doc. 42 ¶ 21.) See expressed no disgruntlement about being required to leave, nor did he use

---

[3]This profanity appears in See's deposition transcript.  (Doc. 33, Ex. 1 at 57.) See has also submitted an affidavit prepared approximately eight months after the deposition in which he contends that he "did not . . . use profanity . . . in any way." (Doc. 42, Ex. 1 ¶ 15.)  A court may disregard an "affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony."  In re CitX Corp., 448 F.3d 672, 679 (3d Cir. 2006) (quoting Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004)).  Accordingly, the court adopts the verison of events described in See's deposition.

[4]See settled and voluntarily dismissed all claims against Sleeger on July 30, 2008.  (Doc. 48.)

profanity toward the officers accompanying him.  (Doc. 33, Ex. 1 at 56; Doc. 42, Ex. 1 ¶ 18.)

En route to the exit, See passed Lukenich and informed her that he was leaving the fairgrounds and would rendezvous with her later.  (Doc. 33, Ex. 1 at 64; Doc. 42, Ex. 1 ¶ 19.)  Immediately after this conversation, See heard a fair security officer shout: "Take him down."  (Doc. 33, Ex. 1 at 64.)  Several officers including Sleeger beset him, forced him to the ground, and handcuffed him.   (Id. at 64, 66.) One of the officers placed a knee on the back of his head, forcing his face into the ground.  (Doc. 32 ¶ 23; Doc. 42 ¶ 23.)  Fink was not present during and did not participate in the arrest.  (Doc. 32 ¶ 28; Doc. 33, Ex. 1 at 140-41; Doc. 42 ¶ 28; Doc. 42, Ex. 3 at 101.)  The fair security officers transported See to a structure known as the paddock, a former stable used as a police staging area.  (Doc. 32 ¶¶ 26-27; Doc. 42 ¶¶ 26-27.)  The paddock currently houses no animals.  (Doc. 42, Ex. 3 at 30-31; Doc. 42, Ex. 5 at 47-48.)

### B.   The Citation Issued by Fink

The fair security officers, who apparently lack the authority to issue criminal citations, requested that Fink, then on patrol, stop at the paddock and prepare a citation for See.  (Doc. 42, Ex. 3 at 47.)  When Fink arrived, he spoke with Sleeger, who recited a sequence of events that differs markedly from the one presented by See.  (Doc. 32 ¶ 34; Doc. 42 ¶ 34.)

According to Sleeger, See loudly protested the beer garden's identification policy after gaining admittance.  (Doc. 42, Ex. 3 at 75-76.)  Sleeger allegedly stated

4

"[t]hat [See] repeatedly was being loud" and that Sleeger requested that See sit down.  (Id.)  Sleeger's supervisor then instructed him to remove See from the fairgrounds.  (Id.)  Sleeger was purportedly escorting See from the concert area when See "stopped . . . turned, and . . . grabbed a hold" of Sleeger in an attempt to reenter the grandstand.  (Id. at 84-85.)  Sleeger and the other officers immediately directed him to the ground, where they handcuffed him.[5]  (Doc. 42, Ex. 4.)  Fink prepared a summary offense citation for disorderly conduct[6] based upon Sleeger's recount.  (Doc. 32 ¶ 34; Doc. 42 ¶ 34.)  He left the citation with an unidentified officer, who later served it upon See.  (Doc. 32 ¶¶ 38-39; Doc. 42 ¶¶ 38-39.)  Fink did not speak with See before preparing the citation.  (Doc. 42, Ex. 3 at 85.)

See was convicted of disorderly conduct before a magisterial district judge and pursued a summary appeal to the York County Court of Common Pleas, where the charges were withdrawn.  (Doc. 32 ¶ 44; Doc. 42 ¶ 44.)  See contends that Fink testified untruthfully during the proceedings before the magisterial district judge,

---

[5]Pursuant to the standard of review on a motion for summary judgment, the court adopts See's version of events.  The court conveys Sleeger's narrative only because it provides the basis for the disorderly conduct citation Fink prepared. While See contests that veracity of this account, he concedes that Fink relied upon it when issuing the citation.  (Doc. 32 ¶ 36; Doc. 42 ¶ 36.)

[6]Disorderly conduct may constitute either a summary offense or a third-degree misdemeanor depending upon the conduct of the defendant.  See 18 PA. CONS. STAT. § 5503(b).  Fink's citation charged See with summary offense disorderly conduct.  (Doc. 425, Ex. 3 at 87-88.)

but he has no evidence to support this claim and characterized the allegation of a

matter of personal opinion.[7]   (Doc. 32 ¶ 43; Doc. 33, Ex. 1 at 197; Doc. 42 ¶ 43.)

See commenced the instant matter on December 27, 2006, alleging that Fink

maliciously prosecuted him and deprived him of his right to access the courts.  He

further contends that Fink and Sleeger engaged in a civil conspiracy to infringe his

constitutional rights.  Fink responds that See has not proffered evidence sufficient

to establish liability and that qualified immunity applies to See's claims.  The

parties have fully briefed these issues, which are now ripe for disposition.

## II.   <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do

not present a "genuine issue as to any material fact," and for which a jury trial

would be an empty and unnecessary formality.  <u>See</u> FED. R. CIV. P. 56(c).  It places

the burden on the non-moving party to come forth with "affirmative evidence,

beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v.

City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see</u>

---

[7]See testified as follows:

Q.   Do you have any evidence . . . that would support your position that
      Officer Fink testified untruthfully at the district justice hearing?
A.   No, I do not.
Q.   So this is just a matter of your opinion?
A.   No. I was there.
Q.   And again, it's a matter of your opinion that this occurred?
A.   Yes.

(Doc. 33, Ex. 1 at 197.)

<u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> Fed. R. Civ. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

## III.   <u>Discussion</u>

See advances § 1983 claims against Fink for denial of access to the courts and malicious prosecution.  He appends a conspiracy claim under state law, alleging that Fink conspired with Sleeger to deprive him of his constitutional rights.  The court will address these claims *seriatim*.

### A.    <u>Claims under 42 U.S.C. § 1983</u>

Section 1983 provides protection where official action causes a "deprivation of rights protected by the Constitution."  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978).  However, § 1983 is not an independent source of substantive rights. <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979); <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996).  Rather, "it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws."  <u>Kneipp</u>, 95 F.3d at 1204; <u>see also</u> <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 119 (1992) (Section 1983 "does not provide a remedy for abuses that do not violate federal law.").  In order to establish a § 1983 claim, a plaintiff must demonstrate, first, the deprivation of a constitutional right, and, second, that a "person acting under the color of state law"

is responsible for the alleged deprivation.  <u>Kneipp</u>, 95 F.3d at 1204 (internal

citations omitted); <u>Collins</u>, 503 U.S. at 120.

### 1. <u>Right of Access to the Courts</u>

Several constitutional provisions safeguard the right to obtain legal relief by

advancing a suit in court.  These provisions include the Privileges and Immunities

Clause of Article IV, the First Amendment Petition Clause, the Fourteenth

Amendment Equal Protection Clause, and the Due Process Clauses of the Fifth and

Fourteen Amendments.  <u>Gibson v. Superintendent of N.J. Dep't of Law & Pub.</u>

<u>Safety–Div. of State Police</u>, 411 F.3d 427, 441 (3d Cir. 2005).  These clauses create

two distinct right-of-access claims.  The first is prospective in nature and requires

the plaintiff to prove that a currently existing condition prevents the plaintiff from

crossing the threshold of the courthouse.  <u>Christopher v. Harbury</u>, 536 U.S. 403, 413

(2002); <u>Gibson</u>, 411 F.3d at 441.  The remedy for this claim is removal of the barrier,

thereby allowing the plaintiff to pursue the underlying cause of action.  <u>Gibson</u>, 411

F.3d at 441.

The second right-of-access claim is retrospective and arises when a previous

impediment to litigation permanently closed the courthouse door on the underlying

claim.  <u>Christopher</u>, 536 U.S. at 413-14; <u>Gibson</u>, 411 F.3d at 441-42.  The plaintiff

must prove that (1) the plaintiff would have been successful in the underlying

litigation, (2) the defendant committed an official act that prevented the plaintiff

from pursuing judicial relief, and (3) the plaintiff cannot obtain relief by pursuing

the underlying claim in another lawsuit.  <u>Piskanin v. Hammer</u>, No. Civ.A. 04-1321,

2005 WL 3071760, at *12 (E.D. Pa. Nov. 14, 2005); see also Christopher, 536 U.S. at 415; Gibson, 411 F.3d at 442.  The final element requires that the hurdles imposed by the defendant become an insurmountable bar to litigation, such as expiration of the limitations period or spoliation of evidence.  Christopher, 536 U.S. at 415 (requiring the plaintiff to "identify a remedy that may be awarded as recompense but [that is] not otherwise available in some suit that may yet be brought"); Naluan v. Purfield, No. Civ.A. 05-6186, 2006 WL 3208771, at *2-3 (E.D. Pa. Nov. 2, 2006) (observing that a plaintiff may advance an access-to-courts claim based upon state officials' wrongful concealment of information essential to a plaintiff's right of action).

In the present case, See advances only a retrospective right-of-access claim. He contends that Fink issued the disorderly conduct citation to discourage him from pursuing an excessive force claim against Sleeger arising from the arrest. (Doc. 45 at 10).  However, Fink did not prevent See from advancing an excessive force claim against Sleeger.  In fact, See has pursued and ostensibly received

recovery for such a claim in this very lawsuit.  (See Doc. 14 ¶ 37; Doc. 48).  The

motion for summary judgment will therefore be granted.[8]

### 2.   **Malicious Prosecution**

A malicious prosecution claim requires a plaintiff to demonstrate that

"(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding

ended in his favor; (3) the defendant initiated the proceeding without probable

cause; (4) the defendant acted maliciously or for a purpose other than bringing the

plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with

the concept of seizure as a consequence of a legal proceeding."  Johnson v. Knorr,

477 F.3d 75, 82 (3d Cir. 2007); O'Malley v. Lukowich, No. 3:08-CV-0680, 2008 WL

4861477, at *7 (M.D. Pa. Nov. 7, 2008).  The plaintiff must establish that the

defendant commenced criminal proceedings in bad faith or with an improper

motive.  See Bowser v. Borough of Freehold, 99 F. App'x 401, 404 (3d Cir. 2004)

(concluding that defendant was entitled to summary judgment because plaintiff

failed to proffer evidence of improper motive or malicious intent); Grendysa v.

---

[8]See's brief in opposition identifies no right-of-access cases, instead citing
precedent governing First Amendment retaliation claims.  (Doc. 45 at 7-9.)  Insofar
as See predicates recovery upon alleged retaliation, such a claim is barred because
it does not appear in the amended complaint (Doc. 14).  See Tome v. Harley
Davidson Motor Co., No. 1:CV-06-2155, 2007 WL 3125090, at *7 (M.D. Pa. Oct. 24,
2007) ("Claims not alleged in a complaint may not be raised for the first time in
opposition to a motion for summary judgment."); see also Shingara v. Skiles,
No. 1:04-CV-0621, 2007 WL 210800, at *3 n.5 (M.D. Pa. Jan. 24, 2007) (holding that
claims raised in the first instance at the summary judgment phase are waived).

<u>Evesham Twp. Bd. of Educ.</u>, No. Civ.A. 02-1493, 2005 WL 2416983, at *10 (D.N.J. Sept. 27, 2005) (same).

In the instant matter, See's malicious prosecution claim fails because Fink did not issue the citation for a vindictive or improper purpose.  Fink was not present during See's arrest, and he did not speak with Sleeger prior to arriving at the paddock.  Fink cited See for disorderly conduct based upon Sleeger's account. Notwithstanding the alleged inaccuracy of Sleeger's statements, Fink had no reason to doubt their veracity at the time he prepared the citation.  Fink never accosted See or spoke to him maliciously, and record indicates that he acted only to cite See for the disorderly conduct described by Sleeger.

See asserts that Fink acted maliciously because Fink did not question other concert attendees or solicit See's version of events or before preparing the citation. (Doc. 33, Ex. 1 at 177; Doc. 45 at 12.)  However, neither of these assertions establish that Fink acted with an improper purpose.  The crowd attending the concert consisted of several thousand individuals.  (Doc. 32 ¶ 37; Doc. 42 ¶ 37.)  Identifying the individuals from this multitude who observed See's arrest would have presented a daunting task.[9]  Assuming that witness identification were possible,

_____

[9]See has proffered deposition testimony from John Ogden, an attorney who witnessed his arrest.  See discovered Ogden's identity by happenstance when he contacted Ogden to obtain legal representation two days after the arrest.  (Doc. 42, Ex. 2 at 64-65.)  Ogden declined to represent See because he possessed personal knowledge of the events at issue, and See subsequently retained his current counsel.  Nothing in the present record suggests that Fink could have identified Ogden or any other witness at the scene of the arrest without performing an exhaustive investigation.

those who had purchased concert tickets would likely have been unwilling to speak

with Fink during the concert.  Witnesses who lacked concert tickets would have

dispersed throughout the fairgrounds.  Further, Fink testified that only eight to ten

municipal police officers were assigned to patrol the fairgrounds.[10]  Requiring Fink

to undertake an investigation of the magnitude proposed by See would strain law

enforcement resources and would have been impractical in light of the operational

realities of maintaining security among a crowd of several thousand people.

Nothing suggests that Fink refrained from such investigation in bad faith or as the

result of an improper motive.

Finally, See has identified no precedent requiring a police officer to consult

an alleged wrongdoer prior to issuing a criminal citation, nor has the court

identified any such authority.  The dearth of precedent on this issue comes as no

surprise:  one can hardly imagine a malefactor who would willingly inculpate

himself at the request of the officer preparing a criminal citation.  Fink's neglect to

question See reflects little more than a presumption that See would have denied the

conduct described by Sleeger.  Therefore, Fink's failure to solicit See's opinion does

not constitute evidence of maliciousness or improper purpose.  Rather, the record

demonstrates that Fink acted in good faith for the purpose of "bringing the plaintiff

---

[10]These officers augmented the surveillance provided by fair security officers
such as Sleeger, whose law enforcement authority was limited in scope.  (Doc. 42,
Ex. 3 at 35-36; Doc. 42, Ex. 5 at 23-24.)

to justice."[11]  Johnson, 477 F.3d at 82.  The motion for summary judgment will be

granted with respect to the malicious prosecution claim.[12]

### B.   Conspiracy Claim under State Law

A conspiracy claim under Pennsylvania law requires the plaintiff

demonstrate that (1) two or more individuals agreed either to perform an unlawful

---

[11]See also asserts "that the purpose of citing [him] for disorderly conduct was
to protect Officer Sleeger from any repercussions for his use of excessive force
against the plaintiff."  (Doc. 45 at 12.)  The contours of this argument are unclear;
however, it presumably relies upon the favorable termination rule of Heck v.
Humphrey, 512 U.S. 477 (1994), which prevents a plaintiff from bringing a civil
rights suit that challenges the validity of a criminal conviction.  Plaintiff apparently
believes that Heck would have prevented him from advancing an excessive force
claim had his disorderly conduct conviction been sustained.  This argument is
misconceived, however, because See could have brought an excessive force claim
against Sleeger regardless of the outcome of his disorderly conduct prosecution.
Nelson v. Jashurek, 109 F.3d 142, 146 (3d Cir. 1997) (opining that Heck does not bar
an excessive force claim because success on such a claim would not call into doubt
a criminal conviction obtained after the allegedly improper arrest).

[12]Fink alternatively invokes qualified immunity against the § 1983 claims.
Qualified immunity protects a state actor who has committed constitutional
violations if the plaintiff's rights were not "clearly established" when the individual
acted.  Pearson v. Callahan, --- U.S. ---, 129 S. Ct. 808, 815 (2009).  The state actor is
amenable to suit only if a reasonable person would have known that the state
actor's conduct infringed the plaintiff's constitutional rights.  Id.; see also Curley v.
Klem, 499 F.3d 199, 207 (3d Cir. 2007).  No liability will attach if a reasonable state
actor could have believed that the challenged conduct was lawful.  Springer v.
Henry, 435 F.3d 268, 280 (3d Cir. 2006) ("[T]he court should ask whether the
[official] acted reasonably under settled law in the circumstances.")  (quoting
Hunter v. Bryant, 502 U.S. 224, 228 (1991) (second alteration in original)).  A
reasonable person in Fink's position would have concluded that See could be cited
for disorderly conduct under the circumstances of this case.  In light of the
operational challenge of locating witnesses, the detailed account provided by
Sleeger, and the limited number of law enforcement personnel, the reasonable
officer would have believed that See could be lawfully cited for the summary
offense of disorderly conduct.  Therefore, qualified immunity provides an
appropriate alternative disposition for plaintiff's claims.

act or to perform a lawful act through unlawful means or for an unlawful purpose, (2) at least one co-conspirator performed an overt act in furtherance of the conspiracy, and (3) the plaintiff suffered actual legal damages as a result of the conspiracy.  See McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005); Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979); Phillips v. Selig, 959 A.2d 420, 437 (Pa. Super. Ct. 2008).  The plaintiff must establish that the conspiracy attempted to effect a separate, underlying tort.  Hence, "one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant."  Levin v. Upper Makefield Twp., 90 F. App'x 653, 667 (3d Cir. 2004) (quoting In re: Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 789 (3d Cir. 1999)).  Proof of malicious intent is also essential to a conspiracy claim. Reading Radio, Inc. v. Fink, 833 A.2d 199, 212 (Pa. Super. Ct. 2003).

In the instant matter, See contends that Fink and Sleeger conspired with one another to inflict excessive force upon him during the arrest.[13]  He contends that "[b]y charging the plaintiff with disorderly conduct and fabricating evidence to make it appear that the plaintiff was acting in a manner[] which warranted the attack on him by defendant Sleeger, the defendants agreed to inflict a wrong upon the plaintiff."  (Doc. 45 at 13.)  However, these alleged actions cannot evidence an agreement to use excessive force against See because they occurred after his arrest.

_____

[13]See also alleges that Fink and Sleeger conspired to deprive him of his rights to access the courts and to be free from malicious prosecution.  However, as See suffered no deprivation of these rights, see supra Part III.A, the conspiracy claim predicated upon them likewise fails.

He concedes that he possesses no evidence that Fink fabricated evidence or offered

perjured testimony during criminal proceedings.  (Doc. 33, Ex. 1 at 140.)  Nothing in

the record supports an inference that they entered an improper agreement, and

See's assertions to the contrary are little more than fictive conjecture.  The motion

for summary judgment will be granted with respect to the conspiracy claim.

**IV.**     **Conclusion**

Fink's motion for summary judgment will be granted with respect to See's

claims for denial of access to the courts, malicious prosecution, and conspiracy.

The above-captioned matter will be closed.

An appropriate order is attached.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:      March 10, 2009

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERNEST EUGENE SEE,** | : | **CIVIL ACTION NO. 1:06-CV-2475** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **TIMOTHY FINK,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

AND NOW, this 10th day of March, 2009, upon consideration of the motion

for summary judgment (Doc. 30), and for the reasons set forth in the accompanying

memorandum, it is hereby ORDERED that:

1. The motion for summary judgment (Doc. 30) is GRANTED.

2. The Clerk of Court is instructed to enter JUDGMENT in favor of
   defendant Timothy Fink and against plaintiff on all claims.

3. The Clerk of Court is instructed to CLOSE this case.


   S/ Christopher C. Conner
   CHRISTOPHER C. CONNER
   United States District Judge